G. WILLIAM VANDEWEGHE, JR (SBN 149355)
bvandeweghe@mckennalong.com
CHRISTIAN D. HUMPHREYS (SBN 174802)
chumphrey@mckennalong.com
JAE K. PARK (SBN 234474)
jpark@mckennalong.com
MCKENNA LONG & ALDRIDGE LLP
4435 Eastgate Mall, Suite 400
San Diego, CA  92121
Telephone:    (619) 595-5400
Facsimile:    (619) 595-5450

Attorneys for Plaintiff
ERTC, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERTC, LLC, a Nevada limited liability company,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>LOS COYOTES BAND OF CAHUILLA AND CUPENO INDIANS, a federally recognized Native American Cahuilla Indian Tribe,<br><br>　　　　　　Defendant. | CASE NO. **'11CV2148 IEG  NLS**<br><br>**COMPLAINT FOR:**<br><br>1.　**DECLARATORY AND INJUNCTIVE RELIEF; AND**<br><br>2.　**UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

1   Plaintiff ERTC, LLC ("ERTC"), a Nevada limited liability company, by and through its
2   attorneys, hereby sues Defendant Los Coyotes Band of Cahuilla and Cupeno Indians, a federally
3   recognized Native American Cahuilla Indian Tribe ("Los Coyotes" or the "Tribe"), and alleges
4   the following:

5   ERTC has provided good and valid consideration for a lease of a portion of Los Coyotes'
6   25,000 acre reservation (the "Reservation") in Warner Springs (the "Lease," as further defined in
7   Paragraph 10 below) for ERTC's use in providing shooting ranges and tactical training for law
8   enforcement and military personnel. Los Coyotes approved the Lease and proceeded to further
9   ratify it by repeatedly accepting the benefits of the Lease. Among other things, the Lease
10  expressly included: (a) a valid and irrevocable waiver by Los Coyotes of its sovereign immunity
11  and consent to the jurisdiction of the United States District Court for the Southern District of
12  California; and (b) a representation by both parties that the Lease had been "duly and validly
13  authorized, executed and delivered by such Party and no other action is requisite to the valid and
14  binding execution, delivery and performance of this Lease by such Party".

15  Without any warning or explanation, Los Coyotes suddenly disavowed the Lease and on
16  June 16, 2011, issued a Notice to Vacate that threatened ejectment for ERTC's purported trespass
17  on the leased property. Although ERTC reminded the Tribe that the Lease did not expire until
18  2035 and further attempted to informally resolve the dispute regarding the validity of the Lease,
19  Los Coyotes has failed to negotiate in good faith, and to this day, continues to disavow the
20  validity of the Lease. Members of Los Coyotes even threatened to take matters into their own
21  hands if ERTC did not vacate the leased property—tragically, such threats came to fruition when
22  the Tribe allowed certain Tribal members to take matters into their own hands by pouring
23  gasoline on ERTC's security booth and lighting it on fire, and destroying new surveillance
24  cameras that were installed following the fire. After breaking off negotiations, on September 12,
25  2011, the Tribe issued a Notice of Violation of Tribal Ordinances, which reiterated the Tribe's
26  position that the Lease is invalid.

27  Consequently, ERTC had no choice but to file this action to determine the parties' rights
28  and obligations under the Lease and seek a temporary restraining order and preliminary and

McKenna Long &
Aldridge LLP
Attorneys At Law
San Diego

-1-

permanent injunctions to protect its right of quiet enjoyment of the leased property and the health and safety of ERTC's personnel, property and business.

## PARTIES

1. Plaintiff ERTC is a Nevada limited liability company with its principal place of business in Warner Springs, California.

2. Los Coyotes is a federally recognized Native American Cahuilla Indian Tribe, whose Reservation is located near Warner Springs, California.

## JURISDICTION AND VENUE

3. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure for the purpose of determining a question of actual controversy between the parties, and, in the alternative, for unjust enrichment, as more fully appears below.

4. The Court has subject matter jurisdiction pursuant to Title 28, U.S.C. § 1331, as a question of federal law. ERTC's claim arises under the laws, treaties, and Constitution of the United States, including but not limited to, 28 U.S.C. §§ 2201 and 2202. ERTC's claim also involves the determination of ERTC's right to possession of Indian lands, which is an exclusive province of federal law under *Oneida Indian Nations v. County of Oneida*, 414 U.S. 661 (1974). The unjust enrichment claim also raises a federal question and requires a determination of ERTC's right to possession of Indian lands and improvements made thereto. To the extent such claim is determined to be a state law claim, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367. Furthermore, jurisdiction is proper because Los Coyotes has expressly waived its right to sovereign immunity and consented in writing to the jurisdiction of this Court.

5. Venue is proper in this District under 28 U.S.C. § 1391 because the leased property is located in this District, the defendant resides in this District and the actions and omissions at issue herein occurred in this District.

## GENERAL ALLEGATIONS

6. In or about February 2010, ERTC and Los Coyotes reached an agreement on a seven-year ground lease of a portion of the Reservation (the "Initial Lease"). A true and correct

copy of the Initial Lease and the Exhibits and Addenda thereto is attached hereto as Exhibit 1. The Initial Lease was properly executed by ERTC and, on behalf of Los Coyotes, by Francine Kupsch, who was at the time the authorized representative of Los Coyotes and Tribal Spokeswoman and Tribal Chairwoman. It is Los Coyotes' custom and practice for the Tribal Spokesperson and Chairperson to have the authority to enter into contracts and agreements on behalf of Los Coyotes. The Initial Lease was also reviewed and commented upon by Los Coyotes' attorney, Mark A. Radoff of California Indian Legal Services as well as another attorney for Los Coyotes, before the Tribe's General Membership reviewed, considered, and voted to approve the Initial Lease. Moreover, as set forth in further detail below, Los Coyotes has accepted the benefits of the Lease and otherwise ratified the Initial Lease, and, thus, is estopped from contending that the Initial Lease is void or invalid. Finally, although the Initial Lease form used by the parties contains a space for the "Tribal Stamp and Assembly/Council Ratification" to be inserted, Los Coyotes represented to ERTC that it has no such stamp and Council ratification had already been given as the Executive Council voted upon and approved the Initial Lease.

7. In or about the Fall of 2010, the parties negotiated two Addenda to the Initial Lease. Pursuant to Addendum No. 1, ERTC agreed to develop for Los Coyotes a Childrens' Park, a Tribal Hall and a Tribal Office. The Tribal Hall was to be approximately 50 feet by 25 feet in size, including a kitchen and wood fireplace. The Tribal Office was to be approximately the same size as the Tribal Hall, connected thereto, and include office space, secured storage and a conference room. In exchange for these benefits, Los Coyotes agreed to extend the term of the Initial Lease to twenty-four years and eleven months.

8. Addendum No. 1 was authorized and approved by Los Coyotes and executed by ERTC and, on behalf of Los Coyotes, by Francine Kupsch, who was at the time the authorized representative of Los Coyotes and Tribal Spokeswoman and Tribal Chairwoman, in keeping with Los Coyotes' custom and practice. In addition, Los Coyotes ratified Addendum No. 1 and accepted its benefits as further set forth below and, thus, is estopped from contending that Addendum No. 1 is void or invalid.

9. Pursuant to Addendum No. 3, ERTC agreed to pay a monthly use fee of $500 in exchange for the right to develop and use, for twenty-four years and eleven months, a portion of land on the Reservation as a Driver Training Complex and adjacent Office, Classroom, and Garage. Addendum No. 3 was authorized and approved by Los Coyotes and executed by ERTC and, on behalf of Los Coyotes, by Francine Kupsch, who was at the time the authorized representative of Los Coyotes and Tribal Spokeswoman and Tribal Chairwoman, in keeping with Los Coyotes' custom and practice. It was also executed by Messrs. Milton Campbell and Andy Campbell who have an interest in the property described in Addendum No. 3. In addition, Los Coyotes ratified Addendum No. 3 and accepted its benefits as further set forth below and, thus, is estopped from contending that Addendum No. 3 is void or invalid.

10. On or about December 21, 2011, the Initial Lease was revised and updated (the "Updated Lease;" the Initial Lease, Addenda, and Updated Lease are referred to collectively as the "Lease"). The Updated Lease contained the following changes to the Initial Lease:

(a) The tenant was changed from "EAGLE ROCK TRAINING CENTER, INC," and "EAGLE ROCK TRAINING CENTER, LLC" to "ERTC, LLC."

(b) A provision in Section 9.2 of the Initial Lease, which read, "Provided, however, subject to the forgoing, any permanent Improvements not constituting ERTC's Personal Property at the end of the Lease Term shall become the Property of the Tribe in its 'as is' condition," was deleted.

(c) The persons receiving notice on behalf of the tenant in Section 16.3 were revised from Messrs. Brian Bonfiglio and Ivor Wigham in the Initial Lease to Messrs. Brian Bonfiglio and Sean Roach in the Updated Lease.

(d) Exhibit A to the Initial Lease was updated in the Updated Lease to include a more accurate map of the Reservation.

11. To date, ERTC has expended in excess of $100,000 grading and improving the Children's Park, developing the Plans for the Tribal Hall and Tribal Office, and taking other actions in reliance on the Lease. It has also paid Los Coyotes in excess of $25,000 in rental

1  payments. In addition, ERTC has invested over $300,000 in new facilities and improvement to
2  the Tribe's land to support current and future business activities to benefit Los Coyotes.

3      12.    In addition, on or about January 2011, representatives of ERTC attended a Los
4  Coyotes Executive Council meeting and a General Membership meeting, at the behest of new
5  Tribal Chairman and Spokesman Shane Chapparosa, and presented plans for the Children's Park,
6  the Tribal Hall, and the Tribal Offices. At the Executive Council meeting, the Executive Council
7  made specific recommendations concerning the plans, including increasing the size of the
8  individual offices within the Tribal Office. At the General Membership meeting, ERTC
9  presented to the entire Tribe membership the plans for the Children's Park, the Tribal Hall, and
10 the Tribal Office, and provided enlarged plans for the Tribe's review and comment.

11     13.    Moreover, on or about March 2011, ERTC provided Los Coyotes' Executive
12 Council and several General Members with two tours of the leased property.

13     14.    On or about June 16, 2011, without any prior discussion, warning, or justification,
14 Los Coyotes' attorney, Mark Radoff, sent a letter to ERTC claiming, for the first time, that the
15 Lease was invalid and that ERTC was trespassing on Reservation land. The letter purported to
16 require ERTC to vacate the property by July 16, 2011 and threatened to eject ERTC for trespass
17 after that date.

18     15.    The Tribe initially agreed to forbear enforcing the Notice to Vacate so that the
19 parties could meet and attempt to resolve the dispute over the validity of the Lease. However,
20 after agreeing to meet with ERTC, the Tribe failed to engage in any meetings, despite numerous
21 invitations from ERTC.

22     16.    During this forbearance period, members of the Tribe threatened to harm ERTC's
23 personnel and/or its property and business if ERTC did not vacate the leased property. Such
24 threats came to fruition on or about July 21, 2011 when, upon information and belief, a Tribal
25 member disabled and removed a surveillance camera on ERTC's security booth, doused the booth
26 with gasoline and set it on fire. The fire burned approximately 25,000 acres in Northeastern San
27 Diego County and was commonly referred to as the "Eagle Fire." A relative of the Tribal
28 member who previously made threats to ERTC has been arrested for suspected arson.

McKenna Long &
Aldridge LLP
Attorneys At Law
San Diego

-5-

Case 3:11-cv-02148-WQH-NLS   Document 1   Filed 09/15/11   Page 7 of 9

17. More recently, Tribal members again took matters into their own hands and damaged new surveillance cameras that were installed following the fire. The Tribe has demonstrated no desire or ability to prevent its members from taking action against ERTC.

18. After failing to negotiate in good faith and failing to control its members, on or about September 12, 2011, the Tribe issued a Notice of Violation of Tribal Ordinances in which the Tribe reiterated that ERTC was trespassing on Reservation Land.

19. On or about September 13, 2011, the Los Coyotes Police Department issued a letter to ERTC indicating that it would enforce the Notice of Violation of Tribal Ordinances issued by the Tribe, and that, among other things, "[a]ll persons associated with, clients of, and/or employees of ERTC or its affiliates are prohibited from entering and/or remaining within the exterior boundaries of the Los Coyotes Indian Reservation."

20. ERTC has active ongoing business activities on the leased property, and has executed contracts with third parties to conduct training on the leased property, including one contract with a US military agency to conduct training starting on or about September 21, 2011.

21. The property leased by ERTC from Los Coyotes is uniquely suited for the type of law enforcement and military training conducted by ERTC, and ERTC would be irreparably harmed if Los Coyotes' conduct is not enjoined temporarily, preliminarily and permanently.

22. Therefore, temporary, preliminary and permanent injunctions are therefore necessary to prevent such irreparable harm.

## COUNT 1: DECLARATORY AND INJUNCTIVE RELIEF

23. Plaintiff incorporates by reference paragraphs 1 through 22 as if set forth in full.

24. An actual controversy exists between ERTC and Los Coyotes as to whether the Lease is valid and enforceable.

25. The controversy warrants relief declaring the rights and liabilities of the parties pursuant to 28 U.S.C. § 2201 and declaring and finding: (a) the Lease is valid and enforceable; (b) to the extent, if any, that the Lease requires governmental approval, Los Coyotes is obligated to diligently and in good faith seek such approval; and (c) Los Coyotes may not interfere with ERTC's use and enjoyment of the property as granted in the Lease.

McKenna Long &
Aldridge LLP
Attorneys At Law
San Diego

-6-

26. ERTC is likely to succeed on the merits of this action, and will suffer irreparable injury, including but not limited to loss of its quiet enjoyment of the unique property bargained for under the Lease and harm to its personnel and/or property and business. Accordingly, temporary, preliminary and permanent injunctions are necessary preserve the status quo in order to protect ERTC's quiet enjoyment of the leased property for the remainder of the lease term, as well as the health and safety of ERTC's staff, property and business, and the resulting irreparable harm that would result without such injunctive relief.

## COUNT 2:  UNJUST ENRICHMENT

27. Plaintiff incorporates by reference paragraphs 1 through 22 as if set forth in full.

28. Pursuant to Addendum No. 1, ERTC agreed to develop for Los Coyotes a Childrens' Park, a Tribal Hall and a Tribal Office. The Tribal Hall was to be approximately 50 feet by 25 feet in size, including a kitchen and wood fireplace. The Tribal Office was to be approximately the same size as the Tribal Hall, connected thereto, and include office space, secured storage and a conference room.

29. To date, ERTC has expended in excess of $100,000 grading and improving the Children's Park, developing the Plans for the Tribal Hall and Tribal Office, and taking other action in reliance on the Lease. It has also paid Los Coyotes in excess of $25,000 in rental payments. In addition, ERTC has invested over $300,000 in new facilities and improvement to the Tribe's land to support current and future business activities to benefit Los Coyotes. The fair and reasonable value of the improvements provided to Los Coyotes is approximately $425,000.

30. The Tribe has not paid for these improvements. Rather, in exchange for these benefits, the Tribe agreed to extend the term of the Lease to twenty-four years and eleven months. However, the Tribe now contends that the Lease is invalid, and seeks to keep the improvements provided by ERTC but deny ERTC its bargained for exchange.

31. Thus, the Tribe would unjustly benefit from the improvements to Tribal Land made by ERTC at ERTC's expense.

32. The Tribe's enrichment is unjust, and equity and good conscience require restitution to ERTC on the ground of unjust enrichment/quantum meruit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court:

**ON COUNT 1 – DECLARATORY AND INJUNCTIVE RELIEF**

1. The judgment and decree of the Court determining the rights and obligations of the parties and finding and declaring that:

   a. The Lease is valid and enforceable;

   b. To the extent, if any, that the Lease requires governmental approval, Los Coyotes is obligated to diligently and in good faith seek such approval; and

   c. Los Coyotes may not interfere with ERTC's use and enjoyment of the property as granted in the Lease.

2. Defendants be temporarily, preliminarily and permanently enjoined from interfering with ERTC's quiet enjoyment of the property under the Lease, including ERTC's business, personnel, property, customers and guests; and

3. The costs of suit and such other relief as the Court deems just and equitable.

**ON COUNT 2 – UNJUST ENRICHMENT**

1. Award ERTC compensatory damages according to proof at trial;

2. Award ERTC interest as allowed by law;

3. Award ERTC the costs of suit incurred; and

4. Such other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues properly triable to a jury.

Dated: September 15, 2011               MCKENNA LONG & ALDRIDGE LLP


                                        By: s/Christian D. Humphreys
                                        Christian D. Humphreys
                                        Attorneys for Plaintiff
                                        ERTC, LLC

SD:22242357.7