G. WILLIAM VANDEWEGHE, JR (SBN 149355)
bvandeweghe@mckennalong.com
CHRISTIAN D. HUMPHREYS (SBN 174802)
chumphrey@mckennalong.com
JAE K. PARK (SBN 234474)
jpark@mckennalong.com
MCKENNA LONG & ALDRIDGE LLP
4435 Eastgate Mall, Suite 400
San Diego, CA  92121
Telephone:    (619) 595-5400
Facsimile:     (619) 595-5450

Attorneys for Plaintiff
ERTC, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERTC, LLC, a Nevada limited liability company,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>LOS COYOTES BAND OF CAHUILLA AND CUPENO INDIANS, a federally recognized Native American Cahuilla Indian Tribe,<br><br>　　　　　　Defendants. | CASE NO.<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF ERTC, LLC'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV. P. 65**<br><br>[Concurrently filed with *Ex Parte* Application, Declarations of Brian Bonfiglio, Greg Guedel, Francine Kupsch, Sean Roach, George William VanDeWeghe, Jr., and Jerry VanDeWeghe, and [Proposed] Order]<br><br>Date:　　*Ex Parte*<br>Time:　　*Ex Parte*<br>Judge:　　To be Assigned |

I.      **INTRODUCTION**

Plaintiff ERTC, LLC ("ERTC") is in an urgent need for a Temporary Restraining Order ("TRO") enjoining defendant Los Coyotes Band of Cahuilla and Cupeno Indians ("Los Coyotes" or the "Tribe") from committing the following acts:

(1)     Taking any action to evict or forcibly remove ERTC, its personnel, its equipment, its improvements, and its guests from the leased premises;

(2)     Taking any action to destroy, alter, tamper with, interfere with or inflict injury to ERTC personnel, its equipment, its improvements, and its guests;

(3)     Taking any action to restrict ingress and egress to and from the leased premises by any ERTC personnel or its guests; and

(4)     Taking any action to interfere with ERTC's operations.

Without the prompt issuance of a TRO, ERTC will be irreparably harmed and further violence perpetrated by Tribe members may occur.

The underlying action by ERTCis a dispute regarding the validity of a lease between ERTC and.  ERTC has provided good and valid consideration for a lease of a portion of Los Coyotes' 25,000 acre reservation in Warner Springs (the "Reservation") in order to provide shooting ranges and tactical training for law enforcement and military personnel (the "Lease" as is more fully defined in Section II.B. and II.C., below).  Los Coyotes approved the Lease and proceeded to further ratify it by repeatedly accepting the benefits of the Lease.  Among other things, the Lease expressly included: (a) a valid and irrevocable waiver by Los Coyotes of its sovereign immunity and consent to the jurisdiction of the United States District Court for the Southern District of California, and (b) a representation by both parties that the lease had been "duly and validly authorized, executed and delivered by such Party and no other action is requisite to the valid and binding execution, delivery and performance of this Lease by such Party".  The Lease was originally set to expire on December 31, 2016, but on or about November 5, 2010, the parties executed an addendum extending the lease term so that the Lease expires on February 1, 2035.

Pursuant to the terms of the Lease, ERTC began making improvements to Reservation land for the benefit of Los Coyotes, including building a Children's Park, a Tribal Hall, and Tribal Offices. ERTC also made significant improvements to the leased premises to conduct training for law enforcement and military personnel. Unexpectedly, on or about June 16, 2011, ERTC received a letter (the "Notice to Vacate") from Los Coyotes claiming for the first time that the Lease was invalid because it had not been approved by the Bureau of Indian Affairs. ERTC was given 30 days notice to vacate the leased premises, and threatened that ERTC's failure to vacate would constitute trespass.

The Tribe initially agreed to temporarily forbear enforcing the Notice to Vacate and engage in discussions to resolve the dispute over the validity of the Lease. Unfortunately, during the purported "forbearance period," members of Los Coyotes threatened violence against personnel or property if ERTC failed to vacate the leased premises, and otherwise interfere with ERTC's operations—tragically, such threats came to fruition when the Tribe allowed certain Tribal members to take matters into their own hands by pouring gasoline on ERTC's security booth and lighting it on fire. That fire then spread to burn approximately 14,000 acres in Northeast San Diego County.

On or about September 12, 2011, the Tribe issued a "Notice of Violation of Tribal Ordinance" ("Notice of Violation"), reiterating the Tribe's position that the Lease was invalid, and therefore, ERTC was illegally trespassing on the Reservation. The Tribe's Notice of Violation was followed by a letter from Officer David Sossaman, the Chief of Police of the Los Coyotes Police Department, stating that "[A]ll persons associated with, clients of, and/or employees of ERTC...are prohibited from entering and/or remaining within the exterior boundaries of the Los Coyotes Indian Reservation...." The Tribe's Notice of Violation and threat to arrest ERTC personnel and clients when found on the Reservation interferes with ERTC's ongoing business activities, including ERTC's ability to perform training for a client scheduled for September 21, 2011.

Thus, pursuant to Federal Rules of Civil Procedure Rule 65, ERTC respectfully applies, *ex parte*, for a TRO and an Order to Show cause why a Preliminary Injunction should not be issued.

## II. STATEMENT OF FACTS

### A. Brief Description Of ERTC's Business

ERTC provides training to law enforcement and military personnel in weaponry and tactics. (Declaration of Brian Bonfiglio ("Bonfiglio Decl.") at ¶ 2; Declaration of Jerry VanDeWeghe ("J. VanDeWeghe Decl.") at ¶ 2.) ERTC's principal, Brian Bonfiglio, established ERTC with the vision to provide special training in rough, high desert terrain, to simulate the desert terrain found across the Southwestern United States and across the world (e.g., Afghanistan). (Bonfiglio Decl. at ¶ 3.) It was critical to ERTC that its training center be located in an uninhabited area in the high desert, and feature vast expanses of rough, undeveloped terrain. (Bonfiglio Decl. at ¶ 3; J. VanDeWeghe Decl. at ¶ 3.)

### B. The Lease Between ERTC And Los Coyotes

ERTC learned of a desirable location within the Los Coyotes Indian Reservation (the "Reservation"). (Bonfiglio Decl. at ¶ 3; J. VanDeWeghe Decl. at ¶ 2-3.) The unique features of the terrain at the size of the Reservation were essential to ERTC's business. (Bonfiglio Decl. at ¶ 3; J. VanDeWeghe Decl. at ¶ 3.) On or about March 1, 2010, ERTC and Los Coyotes entered into a written agreement (the "Initial Lease") for the lease of approximately 25,000 acres (the "Premises") on the Reservation. (Initial Lease (3/1/10), Ex. A to Declaration of Francine Kupsch ("Kupsch Decl.").) Los Coyotes' attorneys reviewed and commented upon the Initial Lease, and the Tribe's leadership and members voted to approve the same. (Kupsch Decl. at ¶¶ 2-5.) The lease was properly executed by ERTC and, on behalf of Los Coyotes, by Francine Kupsch, who was at the time the authorized representative of Los Coyotes and Tribal Spokeswoman and Tribal Chairwoman. (Bonfiglio Decl. at ¶ 3; J. VanDeWeghe Decl. at ¶ 3; Kupsch Decl. at ¶ 4; Declaration of Sean Roach ("Roach Decl.") at ¶ 2.) It is Los Coyotes' custom and practice for the Tribal Spokesperson and Chairperson to have authority enter into contracts and agreements on behalf of Los Coyotes. (Bonfiglio Decl. at ¶ 4; Roach Decl. at ¶ 2; J. VanDeWeghe Decl. at ¶ 4; Kupsch Decl. at ¶¶ 2-3.) Under its terms, the Initial Lease commenced on March 1, 2010 and ran until December 31, 2016. (Initial Lease (3/1/10), Ex. A to Kupsch Decl.)

The Initial Lease allowed ERTC to construct and/or locate and operate certain improvements on the Premises, and required ERTC to pay rent to Los Coyotes based on a percentage of ERTC's net profit from its operations. (Initial Lease (3/1/10), Ex. A to Kupsch Decl.)

Significantly, the Initial Lease contained Los Coyotes' express waiver of sovereign immunity and consent to jurisdiction of this Court. (Initial Lease (3/1/10) at ¶ 16.16, Ex. A to Kupsch Decl.; Kupsch Decl. at ¶ 5.) It also contained Los Coyotes' express representation that the lease was duly and validly authorized, executed and delivered by Los Coyotes, and no other action was requisite to the valid and binding execution, delivery and performance of the lease. (Initial Lease (3/1/10) at ¶ 16.21, Ex. A to Kupsch Decl.)

### C.  The Addenda And Updated Lease

On or about November 5, 2010, ERTC and Los Coyotes executed two addenda (the "Addenda") to the Initial Lease, extending the expiration date from December 31, 2016 to February 1, 2034. (Addenda (11/5/10), Ex. B to Kupsch Decl.)

Pursuant to Addendum No. 1, ERTC agreed to develop for Los Coyotes a Children's Park, a Tribal Hall, and a Tribal Office. (Addendum No. 1 (11/5/10) at ¶ 1, Ex. B to Kupsch Decl.) Addendum No. 1 was executed by ERTC and, on behalf of Los Coyotes, by Ms. Kupsch. (Bonfiglio Decl. at ¶¶ 5-6; Roach Decl. at ¶¶ 4-6; J. VanDeWeghe Decl. at ¶ 5; Kupsch Decl. at ¶ 6.) The Tribal Hall was to be approximately 50 feet by 25 feet in size, including a kitchen and wood fireplace. (Addenda (11/5/10) at ¶ 1, Ex. B to Kupsch Decl.) The Tribal Office was to be approximately the same size as the Tribal Hall, connected thereto, and include office space, secured storage and a conference room. (*Id.*) In exchange for these benefits, Los Coyotes agreed to extend to extend the lease term to twenty-four years and eleven months. (*Id.* at ¶ 2.)

Pursuant to Addendum No. 3, ERTC agreed to pay a monthly use fee of $500 in exchange for the right to develop and use, for twenty-four years and eleven months, a portion of the Premises as a Driver Training Complex and adjacent Office, Classroom, and Garage. (Addenda (11/5/10) at ¶ 3, Ex. B to Kupsch Decl.) Addendum No. 3 was executed by ERTC and, on behalf of Los Coyotes, by Kupsch. (Addenda (11/5/10), Ex. B to Kupsch Decl.; Bonfiglio Decl. at ¶ 7;

Roach Decl. at ¶ 7; J. VanDeWeghe Decl. at ¶ 6; Kupsch Decl. at ¶ 6.) It was also executed by Messrs. Milton Campbell and Andy Campbell who have an interest in some of the property leased pursuant to Addendum No. 3. (Bonfiglio Decl. at ¶ 7; Roach Decl. at ¶ 7; J. VanDeWeghe Decl. at ¶ 6; Kupsch Decl. at ¶ 6.) In addition, Milton Campbell is a member of the Tribe's Executive Committee and an Elder. (Roach Decl. at ¶ 7.)

On or about December 21, 2010, ERTC and Kupsch executed an updated lease (the "Updated Lease"; the Initial Lease, Addenda, and Updated Lease are referred to collectively herein as the "Lease") to correct the status and name of the tenant from "EAGLE ROCK TRAINING CENTER, INC." and "EAGLE ROCK TRAINING CENTER, LLC," to "ERTC, LLC." (Bonfiglio Decl. at ¶ 8; Roach Decl. at ¶ 8; J. VanDeWeghe Decl. at ¶ 7; Kupsch Decl. at ¶ 7; Initial Lease (3/1/10), Ex. A to Kupsch Decl.; Updated Lease (12/21/10), Ex. C to Kupsch Decl.)

### D.   Los Coyotes' Ratification Of The Lease And Its Addenda

Since the execution of the Lease, ERTC has expended in excess of $100,000 grading and improving the Children's Park, developing the plans for the Tribal Hall and Tribal Office, and taking other action in reliance on the Lease. (Bonfiglio Decl. at ¶ 9; J. VanDeWeghe Decl. at ¶ 8; Roach Decl. at ¶ 13.) It has also paid Los Coyotes in excess of $25,000 in rental payments. (Bonfiglio Decl. at ¶ 10; Roach Decl. at ¶ 14.) In addition, ERTC has invested over $300,000 in new facilities and improvement to the Tribe's land to support current and future business activities to benefit Los Coyotes. (Bonfiglio Decl. at ¶ 9; J. VanDeWeghe Decl. at ¶ 8; Roach Decl. at ¶ 13.)

Also, on or about January 2011, representatives of ERTC attended Los Coyotes' Executive Council meeting, at the behest of new Tribal Chairman and Spokesman Shane Chapparosa, and presented to the Tribe plans for the Children's Park, the Tribal Hall and the Tribal Offices. (Roach Decl. at ¶¶ 5, 9.) At that meeting, the Executive Council made specific recommendations concerning the plans, including significantly increasing the size of the individual offices within the Tribal Office. (Bonfiglio Decl. at ¶ 6; Roach Decl. at ¶¶ 5, 9; J. VanDeWeghe Decl. at ¶ 5.) Moreover, in or about March 2011, Los Coyotes' Executive Council

members and several other Tribe members took two tours of the Premises to observe ERTC's facilities and the improvements ERTC was making pursuant to the Lease. (Roach Decl. at ¶ 10.)

### E. Los Coyotes' Notice To Vacate And Threats Of Violence

On or about June 16, 2011, without any prior discussion or warning, Los Coyotes' attorney, Mark Radoff, the Notice to Vacate to ERTC claiming, for the first time, that the Lease was invalid. (June 16, 2011 Letter from Mr. Radoff to ERTC, Ex. 1 to Roach Decl.) The Notice to Vacate purportedly required ERTC to vacate the property by July 16, 2011 and threatened to eject ERTC for trespass after that date. (*Id.*) The parties' numerous attempts to resolve their dispute without resorting to litigation have failed, and the Tribe consistently refused ERTC's request that the Tribe rescind the Notice to Vacate. (Declaration of W. Gregory Guedel ("Guedel Decl.") at ¶¶ 6, 8, 10, 11, 12, 13; Declaration of George William VanDeWeghe, Jr. ("B. VanDeWeghe Decl.") at ¶¶ 2-5.) Although the Tribe initially agreed to "refrain" from ejecting ERTC and "defer" enforcement of the Notice to Vacate "for an interval," the Tribe's agreement was conditioned on new terms to the Lease, including a permit process under which the Tribe would review all of ERTC's contracts and issue permits for ERTC's training programs. (Guedel Decl. at ¶¶ 8, 11, 13; July 12, 2011 E-mail from Mr. Radoff to Mr. Guedel, Ex. 10 to Guedel Decl.) Moreover, members of Los Coyotes have threatened to harm ERTC's personnel and/or its property and business if ERTC does not vacate the Reservation. (Bonfiglio Decl. at ¶¶ 11-12; J. VanDeWeghe Decl. at ¶ 9-10.) That threat became a reality on July 22, 2011, when a Tribal member set fire to ERTC's security booth. (J. VanDeWeghe Decl. at ¶ 11-12.)

After refusing ERTC's numerous invitations to engage in discussions or mediate the dispute regarding the validity of the Lease, and failing to control the conduct of its members and prevent them from doing harm to ERTC's property, on or about September 12, 2011, the Tribe issued the Notice of Violation, reiterating the Tribe's position that the written lease between the Tribe and ERTC is invalid, and therefore, ERTC was illegally trespassing on the reservation. (Notice of Violation (9/12/11), Ex. 3 to Roach Decl.) The Tribe's Notice of Violation was followed by a letter from Officer David Sossaman, the Chief of Police of the Los Coyotes Police Department, stating that "[A]ll persons associated with, clients of, and/or employees of

ERTC...are prohibited from entering and/or remaining within the exterior boundaries of the Los Coyotes Indian Reservation...." (Roach Decl. at ¶ 16; September 13, 2011 Letter from David Sossaman to ERTC, Ex. 5 to J. VanDeWeghe Decl.)

## III.   THE COURT HAS PERSONAL JURISDICTION OVER THE TRIBE

The Lease between Los Coyotes and ERTC contained Los Coyotes' express waiver of sovereign immunity and consent to jurisdiction of this Court. (Initial Lease (3/1/10) at ¶ 16.16, Ex. A to Kupsch Decl.; Kupsch Decl. at ¶ 5.) Specifically, the Tribe agreed as follows:

> **16.16   Tribe's Waiver of Sovereign Immunity**. The Tribe irrevocably grants ERTC, its agents, successors, and counsel, a waiver of the Tribe's sovereign immunity from suits on claims arising from or related to the parties' relationship and/or this Lease. This wavier encompasses all suits in law or equity, for damages, or injunctive or declaratory relief. The tribe consents to the jurisdiction of the United States District Court for the Southern District of California and/or the Superior Court of California in the County of San Diego, and any federal or state court having appellate jurisdiction thereover. The tribe agrees to accept and be bound by any judgment and/or order from or by the aforementioned courts. Accordingly, the Tribe waives the right to have any dispute, controversy, suit, or any proceeding heard in a tribal forum, council, tribunal, or adjudicative body. The Tribe represents it will not seek to revoke, limit, impair, or renounce these waivers, and acknowledges that the waivers also apply to suits against the Tribe for any attempt to do the same.

(Initial Lease (3/1/10) at ¶ 16.16 (emphasis in original), Ex. A to Kupsch Decl.) Pursuant to this express waiver of the Tribe's sovereign immunity, this Court has personal jurisdiction over the Tribe and may hear this *ex parte* application by ERTC. *Kiowa Tribe of Okla v. Mfg. Techs., Inc.*, 523 U.S. 751, 754, 756-58 (1998); *C&L Enters., Inc. v Potawatomi Indian Tribe*, 532 U.S. 411, 418 (2001).

## IV.   ERTC IS ENTITLED TO A TRO

"The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment." *Cruz v. Washington Mut. Bank*, 2011 U.S. Dist. LEXIS 25439, *4 (S.D. Cal. Mar. 14, 2011) (citing *Granny Gooze Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974)). The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *Id.*

A party is entitled to injunctive relief when it shows: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tips in its favor; and (4) that the injunction is in the public interest. *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). As detailed below, ERTC can satisfy each of these elements.

### A. ERTC Is Likely To Succeed On The Merits Of Its Claim

There is little question that the Lease is valid and enforceable—there exists a written agreement that bears the parties' signature, and there is no dispute regarding the authenticity of the signature. The Tribe's sole argument is that the Lease needed to be approved by the Bureau of Indian Affairs, but the Tribe failed to seek such approval. (June 16, 2011 Letter from Mr. Radoff to ERTC, Ex. 1 to Roach Decl.) But contrary to the Tribe's current argument, the Lease contains the Tribe's express representation that the Lease was "duly and validly authorized, executed and delivered by such Party and no other action is requisite to the valid and binding execution, delivery and performance of this Lease by such Party". (Initial Lease (3/1/10) at § 16.21, Ex. A to Kupsch Decl.) Moreover, the Bureau of Indian Affairs has informed ERTC that the Bureau has no involvement in the dispute between ERTC and the Tribe concerning the Lease. (B. VanDeWeghe Decl. at ¶ 7.)

Also, it is the Tribe's custom and practice that the Tribe's Spokesperson and Chairperson have actual authority to execute contracts that bind the Tribe, including leases. (Kupsch Decl. at ¶¶ 2-3.) And even assuming, *arguendo*, that Francine Kupsch somehow lacked actual authority to enter into the Lease and bind the Tribe to the same, Francine Kupsch had apparent or ostensible authority to do so, because the Tribe allowed ERTC to believe that Francine Kupsch has such authority. *C.A.R. Transportation v. Darden Restaurants, Inc.*, 213 F.3d 474, 479-481 (9th Cir. 2000). ERTC was directed to deal solely with Francine Kupsch on all communications related to the Lease. (Bonfiglio Decl. at ¶ 4; Roach Decl. at ¶ 2; J. VanDeWeghe Decl. at ¶ 4.) Francine Kupsch executed the Lease on behalf of the Tribe, as the Tribe's authorized representative and Tribal Spokeswoman and Tribal Chairwoman. (Bonfiglio Decl. at ¶ 3, 4; Roach Decl. at ¶ 2; Kupsch Decl. at ¶ 4; J. VanDeWeghe Decl. at ¶ 3-4.) Despite their extensive

dealings, the Tribe never informed ERTC that Francine Kupsch lacked the authority to execute the Lease. *C.A.R. Transportation*, 213 F.3d at 479-480; *see also*, Cal. Civ. Code § 2317 ("[o]stensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess").[1] As Francine Kupsch had actual and/or ostensible authority to act and execute leases on behalf of the Tribe, there can be no question that the Lease is binding on the Tribe. *Dazo v. Globe Airport Security Services*, 295 F.3d 934, 939 (9th Cir. 2002) ("when the agent is acting within the scope of its agency, the principal is liable for the agent's acts").

Even if Francine Kupsch lacked actual or ostensible authority to enter into the Lease, the Tribe has subsequently ratified and affirmed the same by receiving the benefits from the Lease. *Rayonier Inc. v. Polson*, 400 F.2d 909, 915 (9th Cir. 1968) (citing Restatement (Second) of Agency, and stating that ratification can be established by "conduct manifesting an election to treat an unauthorized act as authorized," or "conduct justifiable only if there were such an election" including "the failure to repudiate the contract"). Los Coyotes has received over $100,000 in the form of ERTC's work to improve and install the Children's Park and developing the Plans for the Tribal Hall and Tribal Office. (Bonfiglio Decl. at ¶¶ 6, 9; J. VanDeWeghe Decl. at ¶ 8; Roach Decl. at ¶¶ 5, 9, 10, 13.) ERTC has also paid Los Coyotes in excess of $25,000 in rental payments. (Bonfiglio Decl. at ¶ 10; Roach Decl. at ¶ 14.) In addition, ERTC has invested over $300,000 in new facilities and improvement to the Tribe's land to support current and future business activities to benefit Los Coyotes. (Bonfiglio Decl. at ¶ 9; J. VanDeWeghe Decl. at ¶ 8; Roach Decl. at ¶ 13.)

Also, in or about January 2011, representatives of ERTC attended Los Coyotes Executive Council meeting, at the behest of new Tribal Chairman and Spokesman Shane Chapparosa, and presented to the Tribe plans for the Children's Park, the Tribal Hall, and the Tribal Offices—which constitute ERTC's consideration to Los Coyotes in exchange for the extended lease term

---

[1] California Law governs the determination of a principal-agent relationship, as the Lease contains an express choice-of-law provision in Section 16.9 selecting California law. (*See* Initial Lease (3/1/10) at § 16.9, p. 12, Ex. A to Kupsch Decl.; Updated Lease (12/21/10) at § 16.9, p. 12, Ex. C to Kupsch Decl.)

under Addendum No. 1. (Bonfiglio Decl. at ¶ 6; Roach Decl. at ¶¶ 6, 9.) At that meeting, the Executive Council made specific recommendations concerning the plans, including significantly increasing the size of the individual offices within the Tribal Office. (Roach Decl. at ¶ 9.) Moreover, in or about March 2011, ERTC provided Los Coyotes' Executive Council with a tour of the leased property to observe ERTC's facilities and the improvements being made by ERTC. (Roach Decl. at ¶ 10.)

### B. ERTC Will Suffer Great And Irreparable Injury In The Absence Of Preliminary Relief

ERTC will suffer great and irreparable injury unless Los Coyotes' wrongful acts are enjoined. Los Coyotes has notified ERTC that ERTC's presence on the Reservation, including the leased property, to be a trespass, notwithstanding the fact that the Lease does not expire until February 1, 2035. (June 16, 2011 Letter from Mr. Radoff to ERTC, Ex. 1 to Roach Decl.; Notice of Violation (9/12/11), Ex. 3 to Roach Decl; September 13, 2011 Letter from David Sossaman, Ex. 4 to Roach Decl.) Without a TRO and/or injunction preventing Los Coyotes from evicting ERTC, ERTC faces the loss of its legitimate lease interest in real property, and the right to quiet enjoyment of the leased property. *Park Village Apartment Tenants Association v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011) (holding that the tenant was entitled to a preliminary injunction enjoining the lessor from evicting the tenant because "it is well established that the loss of interest in real property constitutes an irreparable injury"). This alone satisfies the irreparable harm requirement.

ERTC also has current, ongoing business activities on the leased premises. (J. VanDeWeghe Decl. at ¶ 13-14.) Due to Los Coyotes' interference, ERTC cannot perform contracts it entered into with third parties to conduct training on the leased property, including one contract with a US military agency to begin training on September 21, 2011. Because ERTC is a new company, its failure to perform this and other contracts will be devastating to ERTC's reputation, and cause ERTC to lose prospective customers. *See Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable

harm."); *United Healthcare Ins. Co. v. AdvancePCS*, 316 F. 3d 737, 741 (8th Cir. 2002) ("Loss of intangible assets such as reputation and goodwill can constitute irreparable injury."). Also, ERTC does not have an adequate remedy at law because the losses ERTC may suffer due to the Tribe's wrongful interference with ERTC's current and future business opportunities cannot be fully ascertained. *Danielson v. Local 275, Laborers Intern. Union of North America, AFL-CIO*, 479 F.2d 1033, 1037 (2nd Cir. 1973) ("Irreparable injury is suffered where monetary damages are difficult to ascertain or are inadequate."). Worse yet, the Tribe's interference all but seals ERTC's fate, as the substantial business losses will likely lead to ERTC's bankruptcy. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975) ("As required to support such relief, these respondents alleged (and petitioner did not deny) that absent preliminary relief they would suffer a substantial loss of business and perhaps even bankruptcy. Certainly the latter type of injury sufficiently meets the standards for granting interim relief, for otherwise a favorable final judgment might well be useless").

In addition, ERTC has been warned by law enforcement that certain members of the Los Coyotes tribe plan to use physical force and violence against ERTC personnel and property unless ERTC vacates the leased premises. (Bonfiglio Decl. at ¶¶ 11-12; J. VanDeWeghe Decl. at ¶ 9-10.) That threat became a reality when a Tribal member set ERTC's security booth on fire, which then spread and burned over 14,000 acres in Northeastern San Diego County. (J. VanDeWeghe Decl. at ¶ 11-12.) Unless Tribe and its members are enjoined from using further physical force and violence to remove ERTC, its personnel, its equipment, its improvement, and its guests, ERTC will suffer irreparable injury to its personnel, equipment, and business.

### C.   The Balance Of Equities Tips In ERTC's Favor

ERTC's request for a TRO was triggered by the unjustified conduct of Los Coyotes. ERTC is the victim of Los Coyotes' unexpected and unwarranted claim that the Lease was invalid and that ERTC was trespassing. Making matters worse, Tribe members have threatened to take matters into their own hands, destroy ERTC property, and forcibly remove ERTC from the Reservation. (Bonfiglio Decl. at ¶¶ 11-12; J. VanDeWeghe Decl. at ¶¶ 9-10.) ERTC is facing significant economic losses that cannot be fully quantified, as well as the threat of physical

violence to its personnel and property. (Bonfiglio Decl. at ¶ 12; J. VanDeWeghe Decl. at ¶¶ 9, 10, 13, 14.)

On the other hand, Los Coyotes has decided to declare the Lease void and unenforceable, despite having accepting over $400,000 in benefits under the Lease in the form of improvements made by ERTC on Tribal land and rent paid by ERTC to the Tribe. (Bonfiglio Decl. at ¶¶ 6, 9; Roach Decl. at ¶¶ 5, 9, 10, 13; J. VanDeWeghe Decl. at ¶8.) Under these circumstances, the equities undeniably favor ERTC.

### D. The Injunction Is In The Public Interest

Lastly, the relief ERTC seeks is in the public interest because it will maintain the peace and avoid any chance of physical altercations between the Tribe and ERTC and loss of property.

## V. THERE IS NO NEED FOR A BOND

Although a bond is required under Federal Rules of Civil Procedure Rule 65(c), the Court has wide discretion as to the amount. *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999). In fact, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

Here, the TRO would not cause any harm to the Tribe. All ERTC is seeking is to maintain the status quo until the final adjudication of the validity of the Lease. On the other hand, the Tribe is seeking to evict ERTC, even after bargaining for ERTC to lease the premises for almost 25 years. Further, by Los Coyotes' own admission, the rugged and undeveloped nature of the property leased to ERTC is not suitable for any other type of economic development—thus, the property leased to ERTC would not be used for any other purposes if not for ERTC's law enforcement and military training programs. Thus, there is no harm to the Tribe arising out of ERTC occupying the premises already leased to ERTC for 25 years.

## VI. CONCLUSION

Based on the foregoing, ERTC respectfully requests that the Court grant this *ex parte* application and issue a TRO enjoining and restricting Los Coyotes, its members, and anyone acting in concert with them, from committing the following acts:

(1)     Taking any action to evict or forcibly remove ERTC, its personnel, its equipment, its improvements, and its guests from the leased premises;

(2)     Taking any action to destroy, alter, tamper with, interfere with or inflict injury to ERTC personnel, its equipment, its improvements, and its guests;

(3)     Taking any action to restrict ingress and egress to and from the leased premises by any ERTC personnel or its guests; and

(4)     Taking any action to interfere with ERTC's operations.

ERTC further respectfully requests that the Court issue an Order to Show Cause why a Preliminary Injunction should not be issued.

Dated: September 15, 2011                    Respectfully submitted,

MCKENNA LONG & ALDRIDGE LLP


By: s/Christian D. Humphreys
    Christian D. Humphreys
    Attorneys for Plaintiff
    ERTC, LLC

SD:22242488.2