# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERTC, LLC,<br><br>                    Plaintiff,<br>   vs.<br>LOS COYOTES BAND OF CAHUILLA AND CUPENO INDIANS, a federally recognized Native American Cahuilla Indian Tribe,<br><br>                    Defendant. | CASE NO. 11cv2148-WQH-NLS<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the "Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction Pursuant to Fed. R. Civ. P. 65" ("Application for Temporary Restraining Order"). (ECF No. 11).

**I.    Background**

On September 15, 2011, Plaintiff ERTC, LLC ("ERTC") filed a "Complaint for Declaratory and Injunctive Relief and Unjust Enrichment" against Defendant Los Coyotes Band of Cahuilla and Cupeno Indians ("Los Coyotes"). (ECF No. 1). Los Coyotes is a federally recognized Native American Indian Tribe whose Reservation is located in San Diego County California.

Plaintiff alleges that Plaintiff "has provided good and valid consideration for a lease of a portion of Los Coyotes' 25,000 acre reservation ... in Warner Springs ... for ERTC's use in providing shooting ranges and tactical training for law enforcement and military personnel. Los Coyotes approved the Lease and proceeded to further ratify it by repeatedly accepting the benefits of the Lease." (ECF No. 1 at 2). Plaintiff alleges that "Los Coyotes suddenly

disavowed the Lease," and "[a]fter breaking off negotiations, on September 12, 2011, the Tribe issued a Notice of Violation of Tribal Ordinances." *Id*. Plaintiff alleges that "[m]embers of Los Coyotes even threatened to take matters into their own hands if ERTC did not vacate the leased property—tragically, such threats came to fruition when the Tribe allowed certain Tribal members to take matters into their own hands by pouring gasoline on ERTC's security booth and lighting it on fire, and destroying new surveillance cameras that were installed following the fire." *Id*.

On September 16, 2011, Plaintiff filed an Ex Parte Application for Temporary Restraining Order. (ECF No. 4). On September 19, 2011, Los Coyotes filed an Opposition to the application. (ECF No. 7). On September 20, 2011, a hearing on the application was held before this Court, at which the application was withdrawn. (ECF No. 8).

On October 26, 2011, Plaintiff filed a second Ex Parte Application for Temporary Restraining Order. (ECF No. 11). Plaintiff moves for a temporary restraining order "enjoining and restricting the Los Coyotes Band of Cahuilla and Cupeno Indians ..., its members, and anyone acting in concert with them, from committing the following acts:

> (1) Taking any action to evict or forcibly remove ERTC, its personnel, its equipment, its improvements, and its guests from the leased premises;
> (2) Taking any action to destroy, alter, tamper with, interfere with or inflict injury to ERTC personnel, its equipment, its improvements, and its guests;
> (3) Taking any action to restrict ingress and egress to and from the leased premises by any ERTC personnel or its guests; and
> (4) Taking any action to interfere with ERTC's operations.

*Id*. at 7.

In support of the Application for Temporary Restraining Order, Plaintiff filed a Declaration of Francine Kupsch, who "served as the Tribal Spokesperson and Chairperson from on or about January 2008 to on or about December 2010." (Kupsch Decl. ¶ 1, ECF No. 12). Kupsch states that, "[o]n or about February or March 2010," she executed on behalf of Los Coyotes a lease between Los Coyotes and ERTC ("Initial Lease"). *Id*. ¶ 4. The Initial Lease, which is attached to Kupsch's Declaration, provides for a lease term of six years and eleven months, and states:

> The Tribe irrevocably grants ERTC ... a waiver of the Tribe's sovereign immunity from suit on claims arising from or related to the parties' relationship and/or this Lease.... The Tribe consents to the jurisdiction of the United States District Court for the Southern District of California.... [T]he Tribe waives the right to have any dispute, controversy, suit, or any other proceeding heard in a tribal forum, council, tribunal, or adjudicative body.

(ECF No. 16-2 at 7). The Initial Lease states that "[e]ach party represents and warrants to the other that ... this Lease has been duly and validly authorized, executed and delivered by such Party and no other action is requisite to the valid and binding execution, delivery and performance of this Lease by such Party...." *Id*. at 8. The signature page of the Initial Lease for the "Tribe" contains Kupsch's signature, and a blank space below the words: "[TRIBAL STAMP AND ASSEMBLY COUNCIL RATIFICATION TO BE INSERTED BELOW]." *Id*. at 11.

In her Declaration, Kupsch states that, on November 5, 2010, Kupsch executed two addenda to the Initial Lease, which extended the terms of the Lease to twenty-four years and eleven months. (Kupsch Decl. ¶ 6, ECF No. 12). Kupsch states that, on December 20, 2010, "the Initial Lease was revised and updated," and "[o]n behalf of the Tribe, I executed [the] Updated Lease." *Id*. ¶ 7-8. The Updated Lease, which is attached to Kupsch's Declaration, contains the same provisions as the Initial Lease quoted above, *see* ECF No. 16-7 at 7-8, and the signature page for the "Tribe" in the Updated Lease contains Kupsch's signature, and a blank space below the words: "[TRIBAL STAMP AND ASSEMBLY COUNCIL RATIFICATION TO BE INSERTED BELOW]." *Id*. at 11. Kupsch states:

> It is the custom and practice of the Tribe to have the Tribal Spokesperson and Chairperson to have authority to enter into contracts and agreements, including leases, on behalf of the Tribe. Under the Tribe's custom and practice, contracts and agreements signed by the Tribal Spokesperson and Chairperson are binding on the Tribe.
>
> While serving as the Tribal Spokesperson and Chairperson, I had the Tribe's authority to negotiate and enter into contracts and agreements, including leases, with third parties on behalf of the Tribe.

*Id*. ¶¶ 2-3.

Plaintiff filed a Declaration from Sean Roach, a member of Plaintiff. Roach states:

> In my dealings with the Tribe, I have always been directed to deal with one person—the Tribal Spokesperson and Tribal Chairperson. That was the case when Francine Kupsch held that office and after Shane Chapparosa was elected

> to that office on or about December 12, 2010.
>
> I have specifically asked the Tribe if it had a Tribal Stamp to affix to agreements to signify Tribal approval and was told that Los Coyotes had no such stamp. I have also specifically asked the Tribe if it had any approval process, in writing or otherwise, and was told that it did not. Instead, its custom and tradition was that the Tribal Spokesperson and Chairperson had the authority to enter into agreements on its behalf.

(Roach Decl. ¶¶ 2-3, ECF No. 4-4). Roach states that "Los Coyotes has repeatedly accepted benefits of the Initial Lease and Addenda," including lease payments in excess of $25,000 and work performed by ERTC related to a "Children's Park" on Tribal land. *Id*. ¶ 13. Roach states that, on June 16, 2011 and September 12, 2011, Los Coyotes representatives sent ERTC a "Notice of Violation of Tribal Ordinances," stating that "the purported ground lease is invalid"; ERTC's "continued use and occupancy constitutes a trespass"; and ERTC is "in violation of ... [t]he Los Coyotes ... Eviction and Exclusion Ordinance." (ECF No. 4-4 at 8, 14).

On October 28, 2011, Los Coyotes filed an opposition to the Application for Temporary Restraining Order. (ECF No. 18). Los Coyotes contends that Plaintiff failed to effect proper service of the Summons, Complaint and Application for Temporary Restraining Order. Los Coyotes contends that the "25-year lease on tribal trust lands ... was never approved by the Bureau of Indian Affairs as required under Federal law, including, but not limited to 25 U.S.C. § 81 and 25 C.F.R. 162." *Id*. at 2. Los Coyotes contends:

> The unapproved lease contains what purports to be a waiver of sovereign immunity signed by the former Chairperson, but on its face does not evidence any approval by the Tribe's General Council, which is the Tribe's governing body, nor was it approved by the Los Coyotes Executive Council which is its elected officials....
>
> Under the Tribe's custom and tradition, the Chairperson or Spokesperson is not unilaterally authorized to waive the Tribe's sovereign immunity. That can only be done by a vote of the Tribe's General Council with the concurrence of its Executive Council.
>
> Notwithstanding the Tribe's governing principles the former Spokesperson signed an Ultra Vires document purporting not only to waive the Tribe's sovereign immunity and also purporting to waive exhaustion of the Tribe's administrative remedies which include proceeding in its Tribal Court....
>
> Under existing tribal law and federal law... the Los Coyotes tribe's exclusive jurisdiction for resolution of the lease's validity and also its enforcement of breach, is its tribal court, the Intertribal Court of Southern California....

> Plaintiff relies on circular logic for this Court to assume jurisdiction or to make any provisional orders since, if the purported lease is not valid then the purported waiver of immunity contained therein is also not valid.

*Id.* at 2-4. Los Coyotes contends: "Since Plaintiff is requesting that this Court allow it to occupy a federal Indian Reservation on trust land, it is in effect asking for an extraordinary remedy that this Court does not have the authority or jurisdiction to grant, and even if it did it would require a substantial amount of bond." *Id.* at 3.

Los Coyotes attached to the opposition a copy of an "Eviction and Exclusion Ordinance" adopted by the Los Coyotes General Council on June 14, 2009, and signed by Kupsch, among others. (ECF No. 18 at 7). The Eviction and Exclusion Ordinance states: "A person may exercise possession and use of Reservation lands only pursuant to a valid lease, assignment or license as authorized by the General Council of the Tribe which is in effect." *Id.* at 8. The Eviction and Exclusion Ordinance states: "A person is subject to eviction from the Reservation under this ordinance for any one or more of the following reasons: 1. A person is in possession of Reservation lands without the consent of the Tribe, evidenced by a lease, assignment or license, as authorized by the General Council...." *Id.*

On October 28, 2011, the Court heard oral argument on the Application for Temporary Restraining Order.

**II.   Standard of Review**

When the nonmovant has received notice, as here, the standard for issuing a temporary restraining order is the same as that for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted). To obtain preliminary injunctive relief, a movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555

U.S. 7, 20 (2008); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction....").

### III.  Analysis

"Suits against Indian tribes are ... barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991). "It is settled that a waiver of [tribal] sovereign immunity cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (quotation omitted). "There is a strong presumption against waiver of tribal sovereign immunity." *Demontiney v. United States*, 255 F.3d 801, 811 (9th Cir. 2001) (citation omitted).

In order for ERTC to demonstrate that a temporary restraining order is warranted, ERTC must first demonstrate a likelihood of success on the merits on its claim that Los Coyotes has waived its tribal sovereign immunity. ERTC contends that Kupsch had actual authority to bind Los Coyotes to the terms of the lease (including the provision waiving sovereign immunity) or, alternatively, that Los Coyotes is bound by the terms of the lease by operation of law pursuant to equitable doctrines (e.g., based upon Kupsch's apparent authority, and/or based upon Los Coyotes' acceptance of benefits from the lease).

Los Coyotes has presented evidence that, prior to Kupsch signing the Initial Lease, the Los Coyotes General Council passed an ordinance stating that "[a] person may exercise possession and use of Reservation lands only pursuant to a valid lease, assignment or license as authorized by the General Council of the Tribe which is in effect." (ECF No. 18 at 8; Eviction and Exclusion Ordinance). ERTC has failed to present evidence to show that the Los Coyotes General Council authorized any version of the lease.   The Court finds that ERTC has failed to demonstrate a likelihood of success on the merits of its claim that Kupsch had actual authority to bind Los Coyotes to the  lease provision and to waive sovereign immunity.

Courts have found that equitable doctrines cannot supercede a specific tribal law

provision, such as the Los Coyotes Eviction and Exclusion Ordinance. "Indian sovereignty, like that of other sovereigns, is not a discretionary principle subject to the vagaries of the commercial bargaining process or the equities of a given situation." *Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 419 (9th Cir. 1989). The Court finds that ERTC has failed to demonstrate a likelihood of success on the merits of the claim that Los Coyotes is bound by the lease's waiver of sovereign immunity by operation of an equitable doctrine.

"When . . . a party has not shown any chance of success on the merits, no further determination of irreparable harm or balancing of hardships is necessary." *Global Horizons, Inc. v. United States Dep't of Labor*, 510 F.3d 1054, 1058 (9th Cir. 2007). The Court need not make a determination of irreparable harm, because the Court finds that ERTC has failed to show a likelihood of success on the merits.

Plaintiff's Application for Temporary Restraining Order is denied.

**IV.   Conclusion**

IT IS HEREBY ORDERED that the Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction Pursuant to Fed. R. Civ. P. 65 is DENIED. (ECF No. 11).

DATED: October 28, 2011

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge